UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAWRENCE ZUCKER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SODASTREAM INTERNATIONAL LTD., STANLEY STERN, DANIEL BIRNBAUM, LAURI HANOVER, DAVID MORRIS, JONATHAN KOLODNY, RICHARD HUNTER, YEHEZKEL OFIR, and TORSTEN KOSTER,<br><br>Defendants. | Civil Action No. _____<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on August 20, 2018 (the "Proposed Transaction"), pursuant to which SodaStream International Ltd. ("SodaStream" or the "Company") will be acquired by PepsiCo, Inc. ("Parent") and its wholly-owned subsidiary, PepsiCo Ventures B.V. ("Buyer") and Saturn Merger Sub Ltd., a direct wholly-owned subsidiary of Buyer ("Merger Sub", and together with Buyer and Parent, "PepsiCo"). Pursuant to the Proposed Transaction, Merger Sub will merge with and into SodaStream, so that SodaStream will be the surviving company and will become a direct wholly-owned subsidiary of Buyer.

2.   On August 20, 2018, SodaStream's Board of Directors (the "Board") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with PepsiCo. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by SodaStream's shareholders and completed, SodaStream's ordinary shareholders will receive $144.00 in cash for each share of SodaStream common stock they own.

3.   SodaStream's shareholders are being asked to vote on the Proposed Transaction at a special general meeting of shareholders of SodaStream that is currently scheduled to be held at SodaStream's principal executive offices on October 9, 2018 at 2:00 p.m. (Israel time) (the "Special General Meeting").

4.   On September 12, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

5.   The Proxy Statement, which was Exhibit 99.1 to a Form 6-K filed with the SEC, omits material information with respect to the Proposed Transaction, which renders the Proxy Statement materially false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.   This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an

individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District because, as allowed under Section 27(a) of the Exchange Act, this District is where the violation at issue in this case occurred because numerous Solicitations, including Plaintiff's, were or will be mailed to Company shareholders residing in this District.

**PARTIES**

9. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of SodaStream ordinary shares.

10. Defendant SodaStream is an Israeli corporation and maintains its principal executive offices at Gilboa Street, Airport City, Ben Gurion Airport 7019900, Israel. Its subsidiary, SodaStream USA, Inc., maintains offices at 136 Gaither Drive, Suite 200 Mount Laurel, NJ 08054. SodaStream's common stock is traded on the NASDAQ under the ticker symbol "Soda."

11. Defendant Stanley Stern ("Stern") was a director of SodaStream and was the Chairman of its Board at all times relevant hereto.

12. Defendant Daniel Birnbaum ("Burke") was a director of SodaStream and its Chief Executive Officer ("CEO") at all times relevant hereto.

13. Defendant Lauri Hanover ("Hanover") was a director of SodaStream at all times relevant hereto.

14. Defendant David Morris ("Morris") was a director of SodaStream at all times relevant hereto.

15. Defendant Jonathan Kolodny ("Kolodny") was a director of SodaStream at all times relevant hereto.

16. Defendant Richard Hunter ("Hunter") was a director of SodaStream at all times relevant hereto.

17. Defendant Yehezkel Ofir ("Ofir") was a director of SodaStream at all times relevant hereto.

18. Defendant Torsten Koster ("Koster") was a director of SodaStream at all times relevant hereto.

19. The defendants identified in paragraphs 11 through 18 are collectively referred to herein as the "Individual Defendants," and together with SodaStream are referred to herein as the "Defendants."

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action on behalf of himself and the other public owners of ordinary shares of SodaStream (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21. This action is properly maintainable as a class action.

22. The Class is so numerous that joinder of all members is impracticable. As of September 4, 2018, there were 22,712,995 SodaStream ordinary shares outstanding and entitled to vote at the Special General Meeting. Those ordinary shares are held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm Plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the

4

other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

27.     SodaStream manufactures, distributes and sells home beverage carbonation systems that enable consumers to easily transform ordinary tap water into sparkling water and flavored sparkling water.

28.     According to the Proxy Statement, in late June 2018, Birnbaum received a message from a former PepsiCo executive asking to discuss an unspecified matter. At the beginning of July, Birnbaum had a brief telephone conversation with the former PepsiCo executive who inquired whether Birnbaum would be willing to meet Indra Nooyi, the Chief Executive Officer of PepsiCo, in London or New York to discuss the beverage industry landscape and potential opportunities that might be available between PepsiCo and SodaStream. Following this call Birnbaum informed Stern about the request of Ms. Nooyi to meet with him.

5

The former PepsiCo executive referenced in the Proxy Statement is never identified in the Proxy Statement.

29. According to the Proxy Statement, on July 15, 2018, Birnbaum, Ms. Nooyi and Mr. Ramon Laguarta, the President of PepsiCo, met in London. Among other things, Ms. Nooyi and Mr. Laguarta raised the possibility of a potential transaction in which PepsiCo would acquire SodaStream. Following the meeting Birnbaum updated Stern about the content of the discussion with Ms. Nooyi and Mr. Laguarta.

30. According to the Proxy Statement, on July 19, 2018, Birnbaum received a telephone call from a senior representative of PepsiCo during which call such representative informed Birnbaum that PepsiCo was willing to make a preliminary non-binding proposal to acquire SodaStream for $118 per SodaStream ordinary share, representing a 34% premium over the closing price of SodaStream ordinary shares on July 18, 2018. Birnbaum informed such PepsiCo representative that, in light of the results that SodaStream expected to report for the second quarter, it was unlikely that the Board would consider a proposal for anything less than $140 per SodaStream ordinary share but that he would inform the Board of PepsiCo's proposal. Later that same day, representatives of PepsiCo provided SodaStream with a written non-binding proposal to acquire the entire outstanding share capital of SodaStream for $118 per SodaStream ordinary share together with a form of non-disclosure agreement and a 30-day exclusivity agreement that PepsiCo requested SodaStream sign in order to discuss possible improvements to its proposal. Following receipt of the non-binding proposal, Birnbaum informed Stern of PepsiCo's proposal. Birnbaum and Stern determined that SodaStream should enter into a non-disclosure agreement with PepsiCo to allow SodaStream to disclose SodaStream's second quarter results to PepsiCo in order to facilitate the receipt of an improved proposal. The senior

representative of PepsiCo referenced in the Proxy Statement is never identified in the Proxy Statement.

31. On August 1, 2018, SodaStream issued its earnings for the second quarter ended June 30, 2018. SodaStream ordinary share price closed at $110.30 per share that day compared to a closing price of $87.30 per share on the previous day representing a one-day increase of 26.3%.

32. The Proxy Statement recounts the history of negotiations in further detail, but is ambiguous in multiple instances where it states that the Board met without members of management present, but does not state whether Birnbaum recused himself from such discussions, so it is unclear whether he was present (as a director) or absent (as management). Examples of the same include the August 9, 2018, special meeting of the Board, the August 17, 2018, special meeting of the Board, and the August 19, 2018, special meeting of the Board at which time the Board agreed to the transaction at $144.00 per ordinary share after having asked PepsiCo to increase its offer two days earlier. Given the potential conflicts Birnbaum had (discussed below) it is important for shareholders to know whether he recused himself from such meetings.

33. On August 20, 2018, each of SodaStream, PepsiCo and Merger Sub executed and delivered the Merger Agreement, effective as of that date, and issued a joint press release announcing the execution of the merger agreement.

34. In connection with the Proposed Transaction, Merger Sub will be merged with and into the Company, with the Company continuing as the surviving corporation in the merger and an indirect, wholly-owned subsidiary of Parent.

35. According to the press release announcing the Proposed Transaction:

> PURCHASE, N.Y. and TEL AVIV, Israel, Aug. 20, 2018 /PRNewswire/ -- PepsiCo, Inc. (NASDAQ: PEP) ("PepsiCo") and

SodaStream International Ltd. (NASDAQ / TLV: SODA) ("SodaStream") today announced that they have entered into an agreement under which PepsiCo has agreed to acquire all outstanding shares of SodaStream for $144.00 per share in cash, which represents a 32% premium to the 30-day volume weighted average price.

"PepsiCo and SodaStream are an inspired match," said PepsiCo Chairman and CEO Indra Nooyi. "Daniel and his leadership team have built an extraordinary company that is offering consumers the ability to make great-tasting beverages while reducing the amount of waste generated. That focus is well-aligned with Performance with Purpose, our philosophy of making more nutritious products while limiting our environmental footprint. Together, we can advance our shared vision of a healthier, more-sustainable planet."

Daniel Birnbaum, SodaStream CEO and Director said, "Today marks an important milestone in the SodaStream journey. It is validation of our mission to bring healthy, convenient and environmentally friendly beverage solutions to consumers around the world. We are honored to be chosen as PepsiCo's beachhead for at home preparation to empower consumers around the world with additional choices. I am excited our team will have access to PepsiCo's vast capabilities and resources to take us to the next level. This is great news for our consumers, employees and retail partners worldwide."

PepsiCo's strong distribution capabilities, global reach, R&D, design and marketing expertise, combined with SodaStream's differentiated and unique product range will position SodaStream for further expansion and breakthrough innovation.

The transaction is another step in PepsiCo's Performance with Purpose journey, promoting health and wellness through environmentally friendly, cost-effective and fun-to-use beverage solutions.

"SodaStream is highly complementary and incremental to our business, adding to our growing water portfolio, while catalyzing our ability to offer personalized in-home beverage solutions around the world," said Ramon Laguarta, CEO-Elect and President, PepsiCo. "From breakthrough innovations like Drinkfinity to beverage dispensing technologies like Spire for foodservice and Aquafina water stations for workplaces and colleges, PepsiCo is finding new ways to reach consumers beyond the bottle, and today's announcement is fully in line with that strategy."

>Under the terms of the agreement between PepsiCo and SodaStream, PepsiCo has agreed to acquire all of the outstanding shares of SodaStream International Ltd. for $144.00 per share, in a transaction valued at $3.2 billion. The transaction will be funded with PepsiCo's cash on hand.
>
>The acquisition has been unanimously approved by the Boards of Directors of both companies. The transaction is subject to a SodaStream shareholder vote, certain regulatory approvals and other customary conditions, and closing is expected by January 2019.
>
>Goldman Sachs acted as financial advisor to PepsiCo in this transaction. Centerview also acted as financial advisor to PepsiCo in the transaction. Gibson, Dunn & Crutcher LLP acted as lead counsel to PepsiCo, Davis Polk & Wardwell LLP as U.S. tax counsel, and Herzog, Fox & Ne'eman as Israeli legal counsel. Perella Weinberg Partners acted as financial advisor to SodaStream with White & Case LLP acting as SodaStream's U.S. legal counsel and Meitar Liquornik Geva Lesham Tal as Israeli legal counsel.

**The Proxy Statement Omits Material Information, Rendering It Materially False and Misleading**

36.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction. As set forth herein, the Proxy Statement omits material information with respect to the Proposed Transaction.

*Material Omissions Relating to SodaStream Forecasts*

37.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion and to evaluate whether the price being offered for SodaStream reflects its true value. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38. Defendants failed to disclose financial projections of SodaStream, despite the fact that Perella Weinberg, was provided with, and relied upon, those projections to perform its valuation analyses to support its "fairness opinion." In particular, according to the Proxy Statement, "[i]n arriving at its opinion, Perella Weinberg, among other things … reviewed certain internal financial statements, analyses, forecasts (the "SodaStream Forecasts"), and other internal financial information and operating data relating to the business of SodaStream, in each case, prepared by management of SodaStream[.]"

39. The Proxy Statement, however, entirely omits the SodaStream Forecasts while repeatedly referencing the same. For example, the Proxy Statement says that on August 9, 2018, the Board "discussed, with the assistance of members of SodaStream's senior management, the prospects of continuing to execute on SodaStream's business plan on a standalone basis"; that on August 19, 2018, "[t]he Board, with the assistance of members of SodaStream's senior management, then discussed in detail additional projected financial information that had been provided to the Board at its request following the August 17 meeting, and which information was provided by SodaStream's senior management to Perella Weinberg"; and reiterates on pages 35-36 that "[t]he Board considered SodaStream's current and historical financial condition, results of operations, competitive position, strategic options and prospects, as well as the financial plan and prospects if SodaStream were to remain an independent public company", touts the "Board's familiarity with SodaStream's business strategy, assets and prospects," and says that the Board considered SodaStream's remaining a stand-alone company.

*Material Omissions Relating to Background Information*

40. The Proxy Statement omits material information regarding the Company's financial projections, as well as the valuation analyses performed by SodaStream's financial advisor, Perella Weinberg Partners LP ("Perella Weinberg"), in connection with the Proposed

Transaction, and certain background information as noted above, including the identities of certain PepsiCo representatives and whether Birnbaum was present at Board meetings without members of management present.

*Omissions Relating to Conflicts of Defendants*

41. The Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications, and in particular with respect to the communications relating to Birnbaum's role in the surviving corporation.

42. The Proxy Statement recognizes that "SodaStream's executive officers and directors have interests in the merger that may be different from, or are in addition to, those of SodaStream shareholders generally." It further notes that there will be an acceleration of vesting of unvested options and restricted share units ("RSUs"), payment for performance-vesting restricted share unit ("PSUs"), will result from the Proposed Transaction, and that:

> PepsiCo has indicated that retention of employees is key to the success of the merger. In order to retain and motivate our executive officers and other employees following the merger, PepsiCo has established a cash and equity retention program, to become effective following the consummation of the merger.

43. The Proxy Statement further discloses that:

> PepsiCo has indicated that retention of employees is key to the success of the merger. In order to retain and motivate our executive officers and other employees following the merger, PepsiCo has established a cash and equity retention program, to become effective following the consummation of the merger. The retention program for our Chief Executive Officer and other executive officers consist substantially of cash and equity awards that are subject to vesting over a three-year period and, in some cases, will also be subject to the achievement of performance targets. The value of the cash-based and equity-based retention awards to be granted (i) to our Chief Executive Officer is a net amount of $4.0 million for time-based cash awards, up to $10.0 million pre-tax for time-based equity awards vesting over a period of three years and

>up to $20.0 million pre-tax for performance-based equity awards that vest over a period of three years, (ii) to our executive officers (excluding our Chief Executive Officer) is approximately $1.9 million pre-tax for time-based cash awards, approximately $3.6 million pre-tax for time-based equity awards that vest over a period of three years and up to approximately $1.8 million pre-tax for performance-based equity awards that vest over a period of three years, and (iii) to all other employees is approximately $23.5 million pre-tax in a combination of cash and equity awards. In addition, in order to recognize the contributions of SodaStream's workforce broadly, each employee with at least one year tenure who did not participate in the Equity Plans will receive a gross cash payment of $5,000 and each employee with less than one year tenure will receive a pro-rata cash payment, in each case, upon the closing of the merger, resulting in an aggregate payment of approximately $12.5 million pre-tax, with the full amount to be paid upon the closing.
>
>The awards described above are subject to vesting protections in the event of termination without "cause" and, in the case of executive officers, resignation for good reason.

44. The August 20, 2018, joint press release announcing the proposed transaction quotes Birnbaum as stating "I am excited our team will have access to PepsiCo's vast capabilities and resources to take us to the next level. This is great news for our consumers, employees and retail partners worldwide."

45. The foregoing quote, especially in conjunction with the above, implies that there were communications regarding post-transaction employment during the negotiation of the underlying transaction.

46. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to SodaStream's ordinary shareholders. This information is necessary for SodaStream's ordinary shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's ordinary shareholders.

*Material Omissions Relating to Potential Conflicts of Perella Weinberg*

47. The Proxy Statement states that on August 19, 2018, "[t]he Board … considered the conflicts disclosure provided by representatives of Perella Weinberg, which indicated limited prior relationships with PepsiCo, and which the Board determined would not impair Perella Weinberg's advice to the Board."

48. The prior relationships of Perella Weinberg with PepsiCo are not disclosed in the Proxy Statement, and neither is the amount of compensation received by Perella Weinberg and its affiliates for providing such services.

49. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

*Material Omissions Relating to Perella Weinberg's Analyses*

*Research Analyst Share Price Targets*

50. According to the Proxy Statement, "Perella Weinberg reviewed and analyzed the most recent publicly available research analyst future price targets for SodaStream ordinary shares prepared and published by four equity research analysts during the period from August 1, 2018 to August 6, 2018."[1]

51. As to this analysis, the Proxy Statement only discloses that "Perella Weinberg noted that the range of recent undiscounted research analyst future price targets for SodaStream ordinary shares during such period was $100.00 to $147.00 per SodaStream ordinary share. Perella Weinberg observed that the analyst future share price targets discounted 12 months using a 10.8% cost of equity ranged from $90.24 to $132.66 per SodaStream ordinary share."

---

[1] The August 1, 2018, date is important, because that is the date that, as noted above, SodaStream issued its earnings for the second quarter ended June 30, 2018, and its ordinary share price closed at $110.30 per share, representing a one-day increase of 26.3%.

52. The Proxy Statement fails to disclose which public equity research analysts were reviewed and each of their specific price targets.

*Material Omissions Regarding Trading Comparables Analysis*

53. Perella Weinberg's Trading Comparables Analysis discloses that, "[f]or SodaStream, Perella Weinberg made calculations based on SodaStream's public filings for historical information and third-party research analysts' estimates from FactSet ('Street Estimates') and the SodaStream Forecasts for forecasted information." Further, the Proxy Statement says on page 45 that "Perella Weinberg's analyses were based in part upon the SodaStream Forecasts and other third party research analyst estimates…."

54. The Proxy Statement fails to disclose which public equity research analysts were used and each of their Street Estimates. As noted above, the Proxy Statement also fails to disclose the SodaStream Forecasts.

55. Additionally, Perella Weinberg's Trading Comparables Analysis indicates that Perella Weinberg "reviewed and compared certain financial information for SodaStream to corresponding financial information, ratios and public market multiples for certain publicly traded companies with operations in the beverage/water industries and used as reference certain consumer growth companies." However, the calculations shown in the Proxy Statement at page 43 do not contain that analysis. Rather, the chart set out shows the high, median, and low multiples of the aggregate values of the comparable companies to their EC/EBITDA multiples. Whatever Street Estimates Perella Weinberg looked at in connection with this analysis must be disclosed.

*Material Omissions in Selected Transactions Analysis*

56. With respect to Perella Weinberg's Selected Transactions Analysis, the S-4 fails to disclose: (i) the objective selection criteria and any benchmarking analyses that Perella

14

Weinberg used; and (ii) why the additional companies in this analysis are not included or limited to the companies in the comparable companies' analysis.

*Material Omission in Discounted Cash Flow Analysis*

57. With respect to Perella Weinberg's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the projected unlevered free cash flows used; how the unlevered free cash flows were calculated (the Proxy Statement says only that they are "calculated, beginning with EBITDA, by adding other income, subtracting taxes and capital expenditures and adjusting for changes in working capital, other investments, deferred taxes and other items) of a company.

58. Perella Weinberg's Discounted Cash Flow Analysis does not disclose what line items were used to calculate unlevered free cash flows, or disclose what unlevered free cash flows were calculated as for any of the calendar years 2018-2023.[2]

59. Perella Weinberg's Discounted Cash Flow Analysis also omits the specific numerical inputs and assumptions underlying the discount rates selected and exit multiple ranges selected.

60. The failure to disclose the foregoing causes the Proxy Statement to be materially misleading because ordinary shareholders are being asked to rely on Perella Weinberg's analyses without being provided sufficient information regarding the key inputs used in the analyses, and without being provided sufficient information to review Perella Weinberg's conflicts. Without this information, SodaStream's ordinary shareholders cannot assess the reliability of the analysis

---

[2] The Proxy Statement says that "Perella Weinberg calculated the implied enterprise value as the sum of (a) the present value (as of August 17, 2018) of SodaStream management's estimated future cash flows of SodaStream during the partial calendar year 2018 (August 18 – December 31) and complete calendar years 2019 through 2023… [and] calculated the terminal value by applying an EV/EBITDA exit multiple range of 11.0x to 15.0x to SodaStream management's estimated EBITDA of SodaStream for calendar year 2023."

15

for themselves. This information is particularly important here because ordinary shareholders are being asked to accept the cash merger consideration in exchange for their interest in the Company's future prospects immediately after the Company recorded extraordinary financial quarterly results.

\* \* \*

61. The above omissions are particularly important here because SodaStream's ordinary shareholders are being asked to accept the cash merger consideration in exchange for their interest in the Company's future prospects.

62. The omission of the above-referenced material information renders the Proxy Statement material false and misleading, including, inter alia, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Interests of Certain of SodaStream's Executive Officers and Directors in the Merger, and (iii) Opinion of SodaStream's Financial Advisor.

63. The omitted information, if disclosed, would significantly alter the total mix of information available to the Company's ordinary shareholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and SodaStream**

64. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65. The Individual Defendants disseminated the materially false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. SodaStream is liable as the issuer of these statements.

16

66. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

67. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

68. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable ordinary shareholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

69. The Proxy Statement is an essential link in causing Plaintiff and the Company's ordinary shareholders to approve the Proposed Transaction.

70. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

71. Because of the materially false and misleading statements in the Proxy Statement, Plaintiff and the other members of the Class are threatened with irreparable harm and have no adequate remedy at law.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

72. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

73. The Individual Defendants acted as controlling persons of SodaStream within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as

17

officers and/or directors of SodaStream and participation in and/or awareness of the Company's operations and/or intimate knowledge of the materially false statements and omissions contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are materially false and misleading and omissions.

74. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be materially misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

75. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

76. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

77. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a

direct and proximate result of defendants' conduct, Plaintiff and the other members of the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23, certifying the Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction unless and until Defendants disseminate a version of the proxy statement that is not materially false and misleading and does not omit material facts ;

C. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

D. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder; and

F. Awarding the Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G. Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 13, 2018　　　　　　By: s/ Michael J. Klein
　　　　　　　　　　　　　　　　　　Aaron L. Brody
　　　　　　　　　　　　　　　　　　Michael J. Klein
　　　　　　　　　　　　　　　　　　**STULL, STULL & BRODY**
　　　　　　　　　　　　　　　　　　6 East 45th Street
　　　　　　　　　　　　　　　　　　New York, NY 10017
　　　　　　　　　　　　　　　　　　Telephone:  (212) 687-7230
　　　　　　　　　　　　　　　　　　Facsimile:  (212) 490-2022
　　　　　　　　　　　　　　　　　　Email:　　　abrody@ssbny.com
　　　　　　　　　　　　　　　　　　　　　　　　mklein@ssbny.com

　　　　　　　　　　　　　　　　　　*Attorneys For Plaintiff*